## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

ANDREW PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

       Plaintiff Pro-Se.

v.

SAFE HOME SECURITY, INC.
6 LANDMARK SQUARE, 4TH FLOOR
STAMFORD, CT 06901,

DAVID G AND LAURA A ROMAN
14 PINE ORCHARD LANE,
KILLINGWORTH, CT, 06419,

LINDNER SECURITY SOLUTIONS, LLC
108 WILSON LANE
CHURCH HILL, MD 21623,

AND

JUSTIN LINDNER
108 WILSON LANE
CHURCH HILL, MD 21623

      Defendants.

Case No.

JURY TRIAL DEMANDED

## **COMPLAINT**

### **Preliminary Statement**

1.     Plaintiff Andrew Perrong ("Plaintiff"), brings this action under the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to

widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

*See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

1

2.    Safe Home Security and Lindner Security Solutions, and their owners, David G Roman, Laura A Roman, and Justin Lindner, ("Defendants") sent pre-recorded telemarketing messages to Plaintiff without his consent, which is prohibited by the TCPA.

3.    The Plaintiff never consented to receive such messages, which were placed to him for telemarketing purposes, specifically to advertise and encourage Plaintiff to purchase Defendants' services.

## Parties

4.    Plaintiff Andrew Perrong is a Pennsylvania resident, and a resident of the Eastern District of Pennsylvania. His mailing address is 1657 The Fairway #131, Jenkintown, PA 19046.

5.    Defendant Safe Home Security, Inc is a Connecticut corporation with its principal place of business in Middletown, CT. The Defendant engages in telemarketing and sells alarm systems in this district, as it did with the Plaintiff. Its address for service of process is 6 Landmark Square, 4th Floor, Stamford, CT 06901.

6.    Defendants David G. Roman and Laura A. Roman are the owners of Safe Home Security, Inc who are, upon information and belief, responsible for its TCPA compliance and marketing strategies, including for the calls for the alarm system Plaintiff received in this district. Their mailing address is 14 Pine Orchard Lane, Killingworth, CT, 06419.

7.    Defendant Lindner Security Solutions, LLC is a Maryland corporation with its principal place of business in Church Hill, MD. The Defendant engages in telemarketing and installation of alarm systems in this district, as it did with the Plaintiff. Its address for service of process is 108 Wilson Lane, Church Hill, MD 21623.

8.    Defendant Justin Lindner is the owner of Lindner Security Solutions, LLC who is, upon information and belief, responsible for its TCPA compliance and marketing strategies,

including for the calls Plaintiff received in this district and the installation scheduled in this district. His mailing address is 108 Wilson Lane, Church Hill, MD 21623.

## Jurisdiction & Venue

9.      The Court has federal question subject matter jurisdiction over these TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

10.      The Court has supplemental subject matter jurisdiction over the related state law claims, which form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

11.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing calls to the Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

12.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

13.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

14.      The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. The TCPA also makes it unlawful to violate any of its implementing provisions codified in 47 C.F.R. § 64.1200 and provides a private cause of action to person who receive calls in violation of this subsection. *See* 47 U.S.C. § 227(c)(5).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

17. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

18. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

consumer-protection-federal-communications-commission-

rulesregulations/160616robocallscomment.pdf.

19.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,

compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do-*

*Not-Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-

events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc

[https://archive.is/oPZSW].

20.     *The New York Times* recently reported on the skyrocketing number of robocall

complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's*

*Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html

[https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls?*

*Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM),

https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-

them-1530610203 [https://archive.is/V2UYp].

21.     Industry data shows that the number of robocalls made each month increased

from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three

years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*,

YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-

billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html

[https://archive.is/pnU5s].

22.     According to online robocall tracking service "YouMail," 5.6 billion robocalls

were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*,

YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

23.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The TCPA Imposes Personal Liability on Those Who Commission Telemarketing Calls

24.     Under the TCPA, an individual such as David Roman, Laura Roman, or Justin Lindner may be personally liable for the acts alleged in this Complaint pursuant to the Communications Act of 1934, of which the TCPA is a part, which reads, inter alia: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user as well as of that person." 47 U.S.C. § 217.

25.     The Third Circuit has held that individuals may be personally liable for violations of the TCPA when they had direct, personal participation in or personally authorized the violative conduct. *City Select Auto Sales Inc. v. David Randall Assocs., Inc*., 885 F.3d 154, 162 (3d Cir. 2018).

**Factual Allegations**

26.     Defendants own and operate companies that sell residential alarm systems. Upon information and belief, the Lindner Defendants are installers of systems from the Safe Home

Security Defendants. *See* https://www.safehomesecurityinc.com/ [https://archive.is/o61lH]; https://lindnersecurity.com/ [https://archive.is/4GZZO].

27.     To generate business for their companies, Defendants rely on indiscriminate telemarketing.

28.     One of the telemarketing strategies used by Defendants use involves the use of pre-recorded telemarketing calls to solicit potential customers, either directly or via third party vendor they retain to make telemarketing calls on their behalf.

29.     None of the Defendants are registered to conduct telemarketing in Pennsylvania, despite so doing, in direct violation of the Pennsylvania Telemarketer Registration Act. 73 Pa. Cons. Stat. § 2241 (2020).

<u>The Calls to the Plaintiff, Mr. Perrong</u>

30.     Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

31.     Mr. Perrong's private telephone number is (215) 947-XXXX (the "Number"). Mr. Perrong is charged per minute and per ring for every call sent and received using this number.

32.     The number is on the National Do-Not-Call Registry, as well as the Pennsylvania Do-Not-Call Registry.

33.     On December 30, 2019 at 12:53 AM, Mr. Perrong received a pre-recorded call on the Number from "Carol" with "Home Security Pros" from the caller ID 215-930-1001, which is a fake, or "spoofed," caller ID that does not go anywhere.

34.     The call utilized an artificial intelligence and pre-recorded message technology known as an "Avatar," in which a telemarketer interacts with a consumer using pre-recorded messages.

35.     In order to identify the legal entity behind this call, Plaintiff interacted with the "Avatar" and confirmed his contact information. He did so as he understood from his past experience dealing with illegal telemarketers that a follow up appointment would then be made by the entity responsible for the initial call, who could then be identified by Plaintiff and held to account for its illegal actions. Plaintiff rightly suspected that "Home Security Pros" was a fictitious name designed to disguise the identity of the entity legally responsible for the illegal telemarketing at issue.

36.     After the initial qualification with the Avatar, "Carol," Plaintiff was transferred to "Chris," a human, who confirmed Plaintiff's information and pitched Plaintiff a sixty-month alarm monitoring contract for $39.99 a month. "Chris" scheduled an installation appointment for January 3, 2020. Plaintiff made it clear that if there were any questions or issues, he would call the caller, and that they were not to call him.

37.     Despite this instruction not to be called, Plaintiff then received two additional calls on January 30 from a blocked caller ID from Same Home Security to verify the installation appointment on January 3. These calls were placed using an Automatic Telephone Dialing System, or ATDS, because of the long pause between when Plaintiff said "hello" and click when Plaintiff was transferred to a representative, along with the capability to completely obscure the caller ID.

38.     On January 3, Plaintiff received eleven calls from various caller IDs, including 443-496-2094, 443-262-2425, 954-504-6904, 646-974-2499, 954-504-6904, and blocked caller IDs, related to the appointment, which were placed by both the Lindner Security Defendants and the Safe Home Security Defendants. These calls were placed using an Automatic Telephone Dialing System, or ATDS, because of the long pause between Plaintiff said "hello," and the

8

connection (or lack of connection) to an agent on the line, and inability to process do-not-call requests.

39.     In an effort to resolve this matter before filing suit, Mr. Perrong spoke with Defendant Justin Lindner to get to the bottom of the calls. Mr. Perrong was advised that Justin Lindner and his company worked exclusively installing systems for Safe Home Security and that Safe Home Security made the initial calls in question. Mr. Perrong did not, however, receive a copy of Lindner's Do-Not-Call policy nor received any confirmation that he was placed on its Do-Not-Call List as he had requested.

40.     Mr. Perrong reached out to numerous individuals at Safe Home Security via e-mail seeking clarification, as well as to receive a copy of Safe Home's Do-Not-Call policy and be placed on its Do-Not-Call List. Mr. Perrong received no response to these inquires, despite the e-mails being opened multiple times, including by Defendants David and Laura Roman.

41.     Mr. Perrong was harmed by these calls. They deprived Mr. Perrong of legitimate use of his phones because the phone line was tied up during the process of its receipt and his privacy was improperly invaded. They used up bandwidth and electricity. Mr. Perrong was charged per minute for the calls. Moreover, these messages injured Mr. Perrong because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Mr. Perrong.

**Defendants' Liability for the Telemarketing Calls**

42.     It is unclear at this stage whether Defendants initiated the calls at issue themselves, among themselves, or through a third party.

43.     If the Defendants initiated the calls themselves, they are directly liable for any TCPA violations.

44.     If the Defendants initiated the calls among themselves, they are liable for all calls, even though they did not initiate them, based on common law agency principles.

45.     Even if, however, Defendants used a third party to make all of the illegal telemarketing calls at issue, they are still legally responsible for the calls.

46.     The Federal Communication Commission ("FCC"), the entity tasked with promulgating rules and orders related to enforcement of the TCPA, has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 F.C.C. Rec. 12391, 12397 (1995).

47.     In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

48.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Defendants may not avoid liability by outsourcing telemarketing, either among themselves or to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re* Dish Network Petition (May 2013 FCC Ruling), 28 F.C.C. Rec. 6574, 6588 (2013)

(internal citations omitted).

49.     More specifically, the May 2013 FCC Ruling held that, even in the absence of

evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make

the calls. *Id.* at 6586.

50.     The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows
> the outside sales entity access to information and systems that normally
> would be within the seller's exclusive control, including: access to detailed
> information regarding the nature and pricing of the seller's products and
> services or to the seller's customer information. The ability by the outside
> sales entity to enter consumer information into the seller's sales or customer
> systems, as well as the authority to use the seller's trade name, trademark
> and service mark may also be relevant. It may also be persuasive that the
> seller approved, wrote or reviewed the outside entity's telemarketing
> scripts.  Finally, a seller would be responsible under the TCPA for the
> unauthorized conduct of a third-party telemarketer that is otherwise
> authorized to market on the seller's behalf if the seller knew (or reasonably
> should have known) that the telemarketer was violating the TCPA on the
> seller's behalf and the seller failed to take effective steps within its power
> to force the telemarketer to cease that conduct.

*Id.* at 6592.

51.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence

of these kinds of relationships . . . through discovery, if they are not independently privy to such

information." *Id.* at 6592-93. Moreover, evidence of circumstances pointing to apparent authority

on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was

acting as the seller's authorized agent." *Id.* at 6593.

11

**Legal Claims**

**Count One:**
**Violation of the TCPA's Prohibition Against Telemarketing**
**Via Pre-Programmed Message and ATDS**

52.     Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

53.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to Plaintiff's telephone using an ATDS and/or artificial or prerecorded voices.

54.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every call made to his using an ATDS and/or artificial or prerecorded voices in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

55.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

56.     The Defendants' violations were negligent and/or knowing.

**Count Two:**
**Violation of the Pennsylvania Telemarketer Registration Act**
**73 Pa. Cons. Stat. § 2241**

57.     Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

58.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act ("PTRA"), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's numbers, on the Pennsylvania Do-Not-Call registry, without registration.

59.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201.

60.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

**Count Three:
Violation of the TCPA's Implementing Regulations
Codified at 47 C.F.R. § 64.1200**

61.     Plaintiff Perrong incorporates the allegations from all previous paragraphs as if fully set forth herein.

62.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to provide Mr. Perrong a

copy of Defendants' Do-Not-Call policy, and refusing to put Mr. Perrong's number on an internal Do-Not-Call List.

63.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone numbers in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

64.    Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

65.    The Defendants' violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services using an ATDS and/or artificial or prerecorded voice, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

C.    Because of Defendants' violations of the TCPA's ATDS and prerecorded message restrictions, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

14

D.      Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for

himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-

9.2(a).

E.      Because of Defendants' violations of the TCPA's implementing regulations,

Plaintiff Perrong seeks for himself $500 in damages for each violation or—where

such regulations were willfully or knowingly violated—up to $1,500 per

violation, pursuant to 47 U.S.C. § 227(c)(5).

E.      Such other relief as the Court deems just and proper.


**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


Dated: **May 26, 2020**


_____

Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

15